IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| VERGIE KING, | : | |
| Plaintiff, | : | |
| vs. | : | CA 12-0312-CG-C |
| CLARKE COUNTY, ALABAMA, | : | |
| Defendant. | | |

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the complaint (Doc. 1), the defendant's motion to dismiss (Doc. 6; *see also* Doc. 7), plaintiff's response in opposition (Doc. 15),  and the defendant's reply (Doc. 16). Upon consideration of the foregoing pleadings, the Magistrate Judge recommends that the Court **GRANT IN PART** and **DENY IN PART** the defendant's motion to dismiss (Doc. 6).

## FINDINGS OF FACT

In September of 2009, Vergie King was hired by Clarke County, Alabama as a 911 dispatcher. (Doc. 1, at ¶ 4.) When plaintiff initially interviewed for this position with Clarke County's 911 Coordinator, Becky Neugent, the two women discussed a fulltime position but, ultimately, a white female, Lisa Tolbert, was also hired, resulting in King and Tolbert sharing the fulltime position. (*Id.* at ¶¶ 5-6.)[1] King and Tolbert took

---

[1] Obviously, therefore, both King and Tolbert were part-time employees. (*Id*. at ¶ 6.)

turns working the night shift with Suzanne Few, a while female who was Clarke County's sole fulltime night dispatcher. (*Id*. at ¶ 7.)

On May 10, 2010, plaintiff suffered a seizure at work and was taken by ambulance to Grove Hill Hospital. (*Id*. at ¶ 8.) After returning home, King made several calls to Neugent in an attempt to return to work but on each such occasion the 911 Coordinator informed her that she "needed a note from her doctor releasing her to [return] to work." (*Id*. at ¶ 9.) King was removed from the work schedule by letter penned by Neugent and dated May 21, 2010. (*Id*. at ¶ 10.) This letter informed King that she was required to establish her ability to return to work no later than June 9, 2010. (*Id*.)

King's physician released her to return to full duty on May 27, 2010. (*Id*. at ¶ 11.) Although plaintiff's doctor restricted her from driving for six months, driving is not a job requirement for a 911 dispatcher and King had "available resources to get to and from work." (*Id*.) Plaintiff met with Neugent on June 25, 2010; the 911 Coordinator reviewed the May 27, 2010 release penned by plaintiff's doctor and then took plaintiff to meet with the County Administrator, Annie Deloise Morris, that same day. (*Id*. at ¶ 12.) During the course of this meeting, Morris instructed Neugent to send plaintiff's job requirements to her doctor "and see if he thought she could do the job[,]" and, as well, instructed Neugent to copy plaintiff with the letter sent to her doctor. (*Id*. at ¶ 13.) Plaintiff never received a copy of this promised letter (*id*.); "[i]nstead, by letter dated June 28, 2010, [p]laintiff was notified by Annie Morris of her termination based on her inability to drive for six months following the seizure." (*Id*. at ¶ 14.)

Following King's termination, Neugent replaced plaintiff with Lisa Tolbert, thereby providing Tolbert with a second fulltime night dispatcher position. (*Id*. at ¶ 15.) "As a result of defendant's actions, [p]laintiff has suffered extreme harm, including, but

not limited to, loss of employment, denial of wages, compensation, and other benefits and conditions of employment. Additionally, [p]laintiff has suffered injury, including pain, humiliation, mental anguish and suffering, and loss of enjoyment of life." (*Id*. at ¶ 16.)

Plaintiff filed this *pro se* action in this Court on May 11, 2012, "alleging discrimination in violation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(b)(4), 29 C.F.R. § 1630.8, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 [] and race discrimination in violation of 42 U.S.C. §§ 1981 and 1983. Plaintiff also alleges a violation of the Family Medical Leave Act [] 29 U.S.C. § 2611, *et seq*." (Doc. 1, at 1.)

## V.     CAUSES OF ACTION

### COUNT I – The Family Medical Leave Act and Retaliation

. . .

18.     As stated, Plaintiff was an eligible employee in that she was a person entitled to leave to care for her own serious health condition pursuant to 29 U.S.C. § 2612. Plaintiff had a serious medical condition under, *inter alia*, 29 C.F.R. § 825.119.

19.     Plaintiff was entitled to benefits under the FMLA and Defendant acknowledged such by approving Plaintiff's request for leave. Defendant is an employer in accordance with 29 U.S.C. § 2611.

20.     Defendant violated the Family Medical Leave Act, 29 U.S.C. § 2614, *inter alia*, by failing or refusing to return Plaintiff to her former or an equivalent position and by interfering with Plaintiff's rights under the FMLA by not allowing her to return to work after Plaintiff was cleared to return to work.

21.     Further, defendant retaliated, coerced, oppressed, and/or took adverse action against Plaintiff due to her need for leave under the FMLA. 29 C.F.R. § 825.220. Plaintiff engaged in a protected activity including opposing defendant's failure to reinstate her to her former position after returning to work. Immediately after this, defendant refused to reinstate Plaintiff and terminated her. Defendant's actions were causally connected to Plaintiff's protected activity.

    22.    As a result of defendant's actions, Plaintiff has suffered extreme harm, including, but not limited to, loss of employment opportunities, denial of wages, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including pain, humiliation, mental anguish and suffering, and loss of enjoyment of life.

**Count II – Race Discrimination and Retaliation in Violation of Title VII, 42 U.S.C. § 1981 and 42 U.S.C. § 1983.**

. . .

    24.    Plaintiff, an African-American, is, and was qualified for the dispatcher position. The plaintiff sought a promotion to a full time night dispatcher position and was more qualified than the white female who received the position. The defendant discriminated against plaintiff because of her race by terminating her and replacing her with a less qualified white female for the position of full time dispatcher. The reasons proffered by defendant for replacing her with a white employee in this position over plaintiff are unworthy of credence and a pretext for discrimination.

    25.    Defendant's actions, as described above, were taken under color of state and/or local law. Such actions were done in furtherance of defendant's policies, practices and customs and with deliberate indifference to plaintiff's rights.

**Count III – Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act, 29 U.S.C. § 794.**

. . .

    27.    As stated, plaintiff is [a] qualified individual pursuant to the ADA and the Rehabilitation Act. Defendant is an employer and a public entity in accordance with 42 U.S.C. § 12131(1). And, upon information and belief, it is also the recipient of federal financial assistance.

    28.    Despite plaintiff's disability, as that term is defined under the ADA and the Rehabilitation Act, she is able to perform the essential functions of, *inter alia*, night shift dispatcher.

    29.    Upon information and belief, defendant knew plaintiff is an individual with a disability. As a result, defendant has, *inter alia,* intentionally discriminated against plaintiff [] in a way which has adversely affected her job opportunities. 42 U.S.C. § 12112(b)(4), 29 C.F.R. § 1630.8

(*Id*. at 4-7.)

4

Defendant Clarke County, Alabama filed its motion to dismiss on July 16, 2012. (Doc. 6.) Therein, defendant contends that plaintiff's FMLA claim is due to be dismissed because she does not meet the statutory requirements of an "eligible employee" pursuant to 29 U.S.C. § 2612 and, further, this claim is barred by Clarke County's entitlement to sovereign immunity. (*Id*. at 1-2.) In addition, Clarke County contends that plaintiff's second and third causes of action are due to be dismissed due to King's failure to exhaust her administrative remedies. (*Id*. at 2-3; *see also* Doc. 7, at 8-10.)

On the very same date that the defendant filed its motion to dismiss, July 16, 2012, the Department of Justice, Civil Rights Division and Disability Rights Section, issued to plaintiff a notice of her right to sue. (Doc. 15, **NOTICE OF RIGHT TO SUE WITHIN 90 DAYS**.)

> On July 13, 2012 your attorney, Mr. Henry Brewster, requested a Right to Sue Notice. The Department of Justice is issuing this Right to Sue Notice, and will not file suit on the above-referenced charge of discrimination that was referred to us by the Equal Employment Opportunity Commission (EEOC). This should not be taken to mean that the Department of Justice has made a judgment as to whether or not your charge is meritorious.
>
> You are hereby notified that conciliation of your case was unsuccessful by the EEOC. You are further notified that you have the right to institute a civil action under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, et seq., against the above-named respondent. If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice.

(*Id*.)

Plaintiff initially filed an unsigned response to the defendant's motion to dismiss on September 5, 2012 (Doc. 13) but, on September 12, 2012, she filed a signed response (Doc. 15). In her response, plaintiff concedes that her FMLA claims should be dismissed since she was not employed by Clarke County "long enough to meet the hours[']

5

requirement for FMLA eligibility." (Doc. 15, at ¶ 5.) With respect to her Title VII claim and her ADA Title II claim, plaintiff makes the following arguments:

> 3.    . . . As evidenced by the attached letter, Plaintiff has received a Right to Sue from the Department of Justice regarding her claims of race discrimination. See Exhibit A. Thus, Defendant's motion to dismiss Plaintiff's Title VII claim for failure to exhaust must be denied.
>
> 4.    . . . [I]t is well-settled that Title II of the ADA does not require exhaustion of administrative remedies for claims of discrimination in the area of employment. See *Bledsoe v. Palm Beach County Soil and Water Conservation District*, 133 F.3d 816, 824 (11th Cir.), *cert. denied,* 525 U.S. 826 (1998). Thus, Plaintiff was not required to file an administrative complaint with regards to her discrimination claims alleging denial of employment benefits based on her disability or perceived disability. Further, Plaintiff's EEOC charge referenced her claims of disability discrimination, which were investigated along with her claims of race discrimination. The Right to Sue from the Department of Justice also provides Plaintiff notice of her right to sue under Title I of the ADA. See Exhibit A. Even though exhaustion was not required for claims under Title II, it is clear that such occurred. Therefore, Defendant's motion to dismiss Plaintiff's Title II claims for failure to exhaust must be denied.

(*Id*. at ¶¶ 3-4.)

In its reply, filed September 14, 2012 (Doc. 16), Clarke County contends that plaintiff's Count II for race discrimination/retaliation in violation of Title VII is due to be dismissed as unexhausted because the right to sue letter plaintiff attached to her response in opposition "**does not give her the right to proceed with a race discrimination action or a retaliation claim based upon race under Title VII.**" (Doc. 16, at 1-2.) The defendant also maintains that Count III of plaintiff's complaint need be dismissed, but now for reasons different from the reason initially averred in the motion to dismiss (*compare id.* at 2-3 *with* Docs. 6 & 7), as follows:

> In the Complaint Plaintiff names Defendant as an employer under Title I of the ADA and makes other allegations that might be construed as an attempt to bring a claim under Title I. Plaintiff has not pled a cause of action under Title I. In her Response to Defendant's motion Plaintiff again states that she is pursuing a Title II claim under ADA. If, in fact, Plaintiff is pursuing a claim under Title II, her Complaint fails to state a claim under Title II.

6

> In her Response to Defendant's Motion to Dismiss and in support of her position that Title II of the ADA does not require exhaustion of the administrative remedies for claims, Plaintiff cites the *Bledsoe* case. The Defendant does not dispute that the *Bledsoe* case stands for the proposition that Title II cases do not require exhaustion of administrative remedies.
>
> Title II requires that a Plaintiff show that she is a qualified individual with a disability that (sic) has been denied benefits of the services, programs or activities of a public entity. Plaintiff's Count III alleges discrimination in adversely affecting her job opportunities. Plaintiff alleges that she meets the essential functions of the night dispatcher. She specifically references regulations applicable to a Title I claim of discrimination. Plaintiff fails to allege any services, programs or activities of Clarke County that she was unable to participate in. Plaintiff fails to establish that she was an individual who met the eligibility requirements of any services, programs or activities in which she was denied participation. Employment is not a service, program or activity. *Elwell v. Oklahoma*, 2012 WL 3937974 (C.A. 10 (Okla.). The Court in *Elwell* specifically stated that employing people isn't a service, program, or activity the university provides. *Id.* at p.9.
>
> Additionally, since the Eleventh Circuit issued its decision in *Bledsoe*, courts in other circuits and districts have considered the issue of whether Title II of the ADA applies to employment claims at all. Subsequent decisions, better reasoned than *Bledsoe*, have found that Congress intended Title I and not Title II to apply to employment claims. *Zimmerman v. Oregon Department of Justice,* 170 F.3d 1169 (9th Cir. 1999); *Menkowitz v. Pottstown Memorial Med. Ctr.*, 154 F.3d 113 (3rd Cir. 1998); *Parker v. Metro. Life Ins. Co.,* 121 F.3d 1006 (6th Cir. 1997); *Trickey v. Selig,* 2012 WL 3245956 (E.D. Ark.); *Osborne v. Oklahoma Employment Security Commission,* 2006 WL 2090089 (W.D. Okla.)[;] *Elwell v. Oklahoma*, 2012 WL 3937974 (C.A. 10 (Okla.).
>
> Even taking all her alleged facts as true, Plaintiff's Complaint fails to state a claim as it fails to show that she is a qualified individual with a disability that (sic) has been denied benefits of the services, programs or activities of a public entity under Title II.

(*Id*. at 2-3 (footnotes omitted).)

## **CONCLUSIONS OF LAW**

A.     **Motion to Dismiss Standard**. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion questions the legal sufficiency of a

complaint (or portions of a complaint); therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989).

Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in Twombly, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. at 678, 129 S.Ct. at 1949, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*., quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1955.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops

8

>short of the line between possibility and plausibility of entitlement to relief.
>
>>Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief.

*Id*. at 678-679, 129 S.Ct. at 1949-1950 (internal citations and quotation marks omitted); *see also id.* at 680, 129 S.Ct. at 1950-1951 (a plaintiff must nudge his claims "'across the line from conceivable to plausible.'"); *see Speaker v. United States Dep't of Health & Human Services Centers for Disease Control & Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010) ("[G]iven the pleading standards announced in *Twombly* and *Iqbal*, [plaintiff] must do more than recite [] statutory elements in conclusory fashion. Rather, his allegations must proffer enough factual content to 'raise a right to relief above the speculative level.'").

    **B.**     <u>**Family Medical Leave Act and Retaliation (Count I)**</u>.  In response to the defendant's motion to dismiss, plaintiff concedes that she "was not employed by Defendant long enough to meet the hours['] requirement for FMLA eligibility[]" and, therefore, "agrees that her claims under the FMLA are due to be dismissed." (Doc. 15, at 3.) In light of the foregoing, the undersigned recommends that Clarke County's motion to dismiss Count I of plaintiff's complaint (Doc. 6, at 1-2) be **GRANTED**.

    **C.**     <u>**Race Discrimination and Retaliation in Violation of Title VII, 42 U.S.C. § 1981 and 42 U.S.C. § 1983**</u>.  In moving to dismiss this count in its entirety (*compare*

Doc. 6, at 2 ("Plaintiff's Second . . . Cause[] of Action, brought under Title VII of the Civil Rights Act of 1964, . . . [is] due to be dismissed for Plaintiff's failure to exhaust her administrative remedies.") *with* Doc. 16, at 2 ("Count II is due to be dismissed.")), the defendant focuses solely on Title VII and the undeniable requirement that a plaintiff need exhaust administrative remedies prior to bringing a claim in court under Title VII, *see, e.g.*, *Bennett v. Chatham County Sheriff Dep't*, 315 Fed.Appx. 152, 161, 2008 WL 4787139, *7 (11th Cir. Nov. 4, 2008) ("Before filing a Title VII employment action, the plaintiff must first exhaust her administrative remedies beginning with filing a discrimination charge with the EEOC."); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) ("Before a potential plaintiff may sue for discrimination under Title VII, she must first exhaust her administrative remedies. . . . The first step down this path is filing a timely charge of discrimination with the EEOC."), to the exclusion of any mention that Count II is also brought pursuant to 42 U.S.C. §§ 1981 and 1983 (*see* Doc. 6). Before turning to the defendant's Title VII exhaustion of administrative remedies argument, the undersigned simply notes that Count II remains a viable cause of action against Clarke County as a claim for race discrimination and retaliation under 42 U.S.C. §§ 1981 and 1983 inasmuch as § 1981 does not have an exhaustion requirement, *see, e.g.*, *Gary v. Menlo Logistics Global Transportation Services, Inc.*, 2007 WL 528096, *4 n. 2 & *5 n.4 (N.D. Ga. Feb. 13, 2007) (recognizing that since § 1981 does not require exhaustion of administrative remedies prior to bringing suit, the plaintiff's "'failure to promote' claim under § 1981 remains[]"), and defendant offers no other reason in favor of dismissal of these claims under §§ 1981 and 1983 (*see* Doc. 6).

Returning to that portion of Count II of plaintiff's complaint alleging race discrimination and retaliation under Title VII, the undersigned agrees with defendant that there is nothing in the record suggesting that King has exhausted her

10

administrative remedies prior to bringing suit in this Court. *See Bennett, supra; Grinnell, supra.* It is of no benefit to plaintiff to argue that she "has received a Right to Sue Letter from the Department of Justice regarding her claims of race discrimination[,]"(Doc. 15, at 2), inasmuch as a perusal of the right-to-sue letter submitted by plaintiff reveals that no mention is made of plaintiff's right to sue under Title VII regarding her claims of race discrimination (*see* Doc. 15,**NOTICE OF RIGHT TO SUE WITHIN 90 DAYS**); instead, that letter only advises plaintiff of her right to sue under Title I of the Americans with Disabilities Act of 1990 (*id.*). Accordingly, because the plaintiff has not supplied this Court with a copy of the charge of discrimination filed with the EEOC, the scope of such charge must be recreated based upon the right-to-sue letter received by plaintiff, which, as aforesaid, merely grants plaintiff the right to sue the defendant under Title I of the ADA. Of course, Title VII charges of race discrimination and retaliation reasonably cannot be expected to grow out of a charge alleging only disability discrimination under the ADA, *compare Enwonwu v. Fulton-Dekalb Hosp. Auth.,* 286 Fed.Appx. 586, 600 (11th Cir. May 12, 2008) (Title VII claims based on race and national origin reasonably could not be expected to grow out of EEOC charge alleging only disability discrimination) *and Chanda v. Engelhard/ICC,* 234 F.3d 1219, 1225 (11th Cir. 2000) (affirming the dismissal of a Title VII retaliatory discharge claim based on complaints about national origin discrimination where the underlying EEOC charge expressly challenged only plaintiff's discharge as constituting both substantive disability discrimination and retaliation for making complaints about disability discrimination in violation of the ADA) *with Thomas v. Miami Dade Public Health Trust,* 369 Fed.Appx. 19, 22 (11th Cir. Mar. 8, 2010) (plaintiff failed to exhaust her claims alleging that she was not promoted because of race and sex where her EEOC charge alleged that such failure to promote was only a result of unlawful retaliation) *and*

11

*Hillemann v. University of Central Fla.,* 167 Fed.Appx. 747, 749 (11th Cir. Jan. 18, 2006) (plaintiff's claims alleging he was not hired for three marketing positions because of race and gender discrimination and retaliation were barred where his EEOC charge about those positions alleged only age discrimination),  and, therefore, the undersigned recommends that the Court **GRANT** the defendant's motion to dismiss King's Title VII claims of race discrimination and retaliation due to a failure to exhaust her administrative remedies.

        **D.**    **Title II Americans with Disabilities Act (ADA) Claim (Count III)**.  The sole basis asserted for dismissal of plaintiff's ADA claim by Clarke County in its motion to dismiss is plaintiff's failure to exhaust her administrative remedies. (Doc. 6, at 2-3; Doc. 7, at 8 & 9-10 (arguing that King failed to exhaust her administrative remedies under the ADA and, therefore, her claim is not mature and is due to be dismissed).) Faced with plaintiff's response that there is no exhaustion requirement under Title II of the ADA, *Bledsoe v. Palm Beach County Soil & Water Conservation District,* 133 F.3d 816, 824 (11th Cir.) ("[T]he *Ethridge* court noted the difference in the application of the exhaustion requirement which is mandatory in Title I but not in Title II of the ADA. The court found that although Title I requires exhaustion, Title II does not because it 'incorporates the enforcement procedures of the Rehabilitation Act, . . . which do not require exhaustion of administrative remedies for non-federal employees.' [*Ethridge v. State of Alabama*,] 847 F.Supp. [903,] 907 [(M.D. Ala. 1993)]. 'An analysis of Title II regulations further makes clear that, while resort to administrative remedies is optional, it is not required.' [] The court referenced the regulations, which plainly state that exhaustion is not required. [] We agree with this analysis and note that it is generally presumed that Congress acts intentionally and purposely where '"it includes particular language in one section of a statute but omits it in another."'"), *cert. denied,* 525 U.S. 826,

119 S.Ct. 72, 142 L.Ed.2d 57 (1998), as well as plaintiff's receipt from the Department of Justice of a right to sue letter which specifically extends to her the right to file suit under Title I of the ADA (Doc. 15, **NOTICE OF RIGHT TO SUE WITHIN 90 DAYS**), Clarke County abandons its exhaustion argument in its reply brief in favor of new arguments which it claims warrant dismissal of Count III of the complaint (Doc. 16, at 3 ("Even taking all her alleged facts as true, Plaintiff's Complaint fails to state a claim as it fails to show that she is a qualified individual with a disability that (sic) has been denied benefits of the services, programs or activities of a public entity under Title II. Count III is also due to be dismissed."); *see also id.* at 2-3). Because this Court cannot consider arguments raised for the first time in a reply brief, *compare Wetherbee v. Southern Co.,* 423 Fed.Appx. 933, 934 (11th Cir. Apr. 19, 2011) ("[A]lthough Wetherbee briefed these issues in detail in his reply brief, we do not consider arguments raised for the first time in a reply brief."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."); and *Herring v. Secretary, Dept. of Corrections,* 397 F.3d 1338, 1342 (11th Cir.) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'"), *cert. denied sub nom. Herring v. Crosby*, 546 U.S. 928, 126 S.Ct. 171, 163 L.Ed.2d 277 (2005), *with Morgan v. Bill Vann Co., Inc.,* 2011 WL 6056083, *1 n.1 (S.D. Ala. Dec. 6, 2011) ("Plaintiff's counsel also raises a large number of new arguments in his reply brief, which is improper in federal practice."); *Sharpe v. Global Sec. Int'l,* 766 F.Supp.2d 1272, 1294 n.26 (S.D. Ala. 2011) ("Because it is improper for defendant to raise this new argument in its reply brief, that argument will not be considered."); and *White v. ThyssenKrupp Steel USA, LLC,* 743

F.Supp.2d 1340, 1357 (S.D. Ala. 2010) ("District courts, including this one, ordinarily do not consider arguments raised for the first time on reply."),[2] and the defendant's failure to exhaust argument is no longer viable, Clarke County's motion to dismiss Count III of the complaint (Doc. 6) is due to be **DENIED**.

## CONCLUSION

Based upon the foregoing, the Magistrate Judge recommends that the Court **GRANT** the defendant's motion to dismiss Count I of the complaint and that portion of

---

[2]  This Court's consideration of the defendant's new arguments raised in reply would be entirely unfair to the *pro se* plaintiff (*see, e.g.*, Doc. 12 (order setting a response date for plaintiff and a reply date for the defendant)), *compare Whitney Bank v. Point Clear Development, LLC*, 2012 WL 2277597, *8 (S.D. Ala. June 18, 2012) ("As a general proposition, and in the interests of fairness to all parties and efficient use of judicial resources, new arguments raised for the first time in a reply brief are not considered.") *with Butler v. Cleburne County Comm'n*, 2012 WL 2357740, *6 (N.D. Ala. Jan. 17, 2012) ("[T]he court generally does not consider issues or arguments raised for the first time in a reply, for to do so deprives the non-movant of a fair opportunity to respond."), *report and recommendation adopted by* 2012 WL 2357741 (N.D. Ala. June 14, 2012), particularly since the defendant will have another opportunity to raise these arguments in another motion, such as a motion for summary judgment, *see, e.g., Murphy v. City of Aventura,* 2008 WL 4540055, *6 (S.D. Fla. Oct. 10, 2008) ("[T]his argument [that the City cannot be held liable for actions taken by a city employee acting outside the course and scope of his employment] was first raised in the City's reply brief and cannot be considered by this Court. . . . Defendants may raise this issue in another motion before this Court, such as a motion for summary judgment.").  In addition, this Court is not inclined to address these new arguments since plaintiff is in the position of easily being able to amend her complaint—if she so desires—to clearly indicate that she also means to state a claim under Title I of the ADA, *compare* Fed.R.Civ.P. 15(a)(2) ("[A] party may amend its pleading [] with the opposing party's written consent or the court's leave. The court should freely grant leave when justice so requires.") *with Marsh v. Georgia Dept. of Behavioral & Health Developmental Disabilities*, 2011 WL 806423, *1 n.1 (S.D. Ga. Feb. 14, 2011) ("In order to establish a prima facie case of employment discrimination under the ADA, a plaintiff must show that: (1) she has a disability; (2) she is a qualified individual; and (3) the employer discriminated against her because of her disability."), *report and recommendation adopted by* 2011 WL 806658 (S.D. Ga. Mar. 2, 2011), and it is not for this Court to inform the Eleventh Circuit that it got it wrong in *Bledsoe* in holding that "Title II does state a cause of action for employment discrimination[,]" 133 F.3d at 825; *see also id*. (Title II encompasses employment discrimination claims), *see Clifton v. Georgia Merit System,* 478 F.Supp.2d 1356, 1366 (N.D. Ga. 2007) ("However significant this court's concerns with allowing employment discrimination claims under Title II, though, it is bound by the prior precedent of this circuit. Because the Eleventh Circuit specifically ruled on this issue in *Bledsoe*, this court must find the plaintiff's claims against GMS under Title II of the ADA cognizable and accordingly reject GMS's arguments that the plaintiff cannot state a claim for employment discrimination under Title II.").

Count II of the complaint that attempts to raise race discrimination/retaliation claims under Title VII (*see* Doc. 6); otherwise, the defendant's motion to dismiss is due to be **DENIED**.

The instructions, which follow the undersigned's signature, contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 27th day of September, 2012.

s/WILLIAM E. CASSADY<br>**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.       *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[3] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.       *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[3]       Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).